### DAVID PEACOCK v. DAVID DICKINSON.

Court of Chancery. New Castle. August 27, 1817.

*Ridgely's Notebook I, 157.*

*Mr. Read, Mr. Vandyke* and *Mr. McLane* for complainant. *Mr. Broom* and *Mr. Booth, Jr.,* for defendant.

The bill states that complainant of the State of New Jersey in the year [——] [1] obtained a patent for casting the irons and making a certain plough, and selling it, called Peacock's Patent Plough. That after obtaining said patent, about August 7, 1811, defendant applied to complainant for an exclusive grant of the right of making, using and vending said plough in Delaware, under said patent. And falsely and fraudulently, and to draw complainant into a contract, represented to complainant that he was a workman well qualified to carry on the business of making ploughs, in good credit, and had the means and ability of making ploughs sufficient for the demand in Delaware; and was competent to perform any contract he might make, etc.

Complainant confiding in said representations, on August 7, 1811, agreed with defendant to permit him to make, use, and vend said patent ploughs in State of Delaware, exclusively of all others, upon the terms and conditions that said David would purchase of complainant all the castings which should be necessary for making such ploughs at certain prices therein specified, and that said David Dickinson would furnish complainant every three months with a fair account of all ploughs and castings by him David Dickinson used and sold, and at end of every six months pay to complainant the sum due for said castings according to the prices mentioned in said agreement, a copy whereof is annexed. That complainant's chief motive for making the agreement was for the better supply of the people of Delaware. That defendant was in embarrassed circumstances, almost insolvent, without the ability to carry on the business. That he cannot supply one half of the demand of the citizens of Delaware for said ploughs. That he has received from complainant from time to time a large number of castings of iron, and has refused or neglected to account to complainant for any part of the castings which has been furnished to him, but has sold and converted them to his own use. Defendant has become more embarrassed and unable to make satisfaction, or to perform and execute the said contract on the part of him, said David Dickinson, whereby the whole consideration that moved complainant to enter into the agreement has failed. That complainant is advised by counsel

---

[1] Blank in manuscript.

that he cannot be compelled to furnish David Dickinson with any more castings by reason of his refusal or neglect to comply with the terms of said agreement, by reason of all which the citizens of the State of Delaware will be deprived of the benefit of said improvement, and complainant deprived of a very lucrative branch of his patent right without any consideration. Complainant charges that said contract and agreement was obtained by defendant by false and fraudulent statements made by him to complainant without consideration, and has received and applied to his own use complainant's property without any compensation, and insists on holding complainant to said agreement although he has not fulfilled and now cannot. Complainant has applied to defendant to account, and to give up the agreement.

Prayer is, that defendant may be compelled by a decree of this court to account to complainant for all the castings of the said patent ploughs furnished to him from the date of the said agreement by complainant in the manner and upon the terms stipulated and set forth in the said agreement, and that he may pay and satisfy complainant pursuant to said agreement all such sum or sums of money that is now due for the said castings. And that defendant may bring into court the said agreement, and that complainant may be released from the same, and that it may be delivered up and cancelled by the order of this court, and that said David Dickinson may be enjoined from making using and vending the said Peacock's Patent Plough anywhere in the State of Delaware during the yet unexpired part of the said patent, and further relief. . . .

Defendant's answer to the original bill. Admits the copy of the article of agreement annexed to the bill. That complainant before agreement did not inquire into circumstances of defendant, and defendant made no representation about them. Complainant knew character of defendant as a plough-maker. Complainant had before the agreement altered one of his patterns at the suggestion of defendant by contracting the pattern of No. 2 one and one-half inch and by adding to the length of the upper and hinder part of the mould plate, which alteration he found to answer a valuable purpose as it created in the southern states a greater demand for that number so altered than for any other number. Complainant's motive in entering into the agreement was [to] advance his own interest by his establishing the credit of his improvement in ploughs by the aid of defendant's skill in making them. Before he endeavored to establish his ploughs they were complained of. He sent a journeyman to make ploughs on his own account. Sunk by it. Denies, or does not recollect any public motive. Defendant was established as plough-maker

of complainant's castings. William Walker making ploughs. Defendant applied, and complainant granted his patent right. He gave no information of his circumstances. Defendant denies he refused to account for iron castings and sale. Defendant on September 25 last past rendered an account of sales. Defendant says at filing of complainant's bill there remained in his hands unsold 180 sets of iron castings and 35 land sides, amounting to $600 which casting are of numbers not [——].[2] Deducting defendant's demands nothing remained due to him. Before the bill complainant assigned his demand to William Walker, and brought suit against defendant for use of Walker, and suit was then depending. Complainant supplied casting until November 28, 1812. Since, he has refused to supply defendant. Always ready to account, never refused to return castings unsold to complainant. Complainant combined with Walker. Recites suit of Dickinson against Walker. Dickinson was sued by Walker on complainant's assignment suit depending. Suit by Jonas Canby, use of William Walker. Judgment and execution. Endorsed on execution as part of real debt to be recovered under penalty account assigned to Walker by complainant to amount of $600 and more. Defendant worth more than $5000 when he made contract. Has means to make ploughs and supply the people. Complainant did not comply with the agreement. He withheld castings. Denies that he never fulfilled agreement. He is ready to fulfill agreement. . . .

[In a supplemental bill complainant alleged that defendant had had castings made by a third party, although under the agreement they were to be furnished by Peacock. This was admitted in the answer to the supplemental bill.]

THE CHANCELLOR. The design and end of the agreement between Peacock and Dickinson was that Dickinson should make, use, and vend Peacock's Patent Plough in the State of Delaware, exclusively of all others; for which Dickinson was to pay to Peacock $150 at two different payments and purchase all the castings of Peacock. The advantage to Dickinson was the exclusive sale of these ploughs in this state; and to Peacock, the receipt of $150, and the sale of his castings. It was not the intention that Dickinson, after the purchase of this privilege, should neglect or cease to make and sell these ploughs; for by such neglect or omission he as effectually deprived Peacock of the benefit of this invention, as if he in any other manner deprived him of the property in this patent. If there had been an absolute sale to Dickinson of this privilege in this state, without any emolument to Peacock

[2] Blank in manuscript.

from the making and vending of these ploughs, Dickinson then might have used the privilege at his pleasure; but as long as Peacock had an interest in the exercise of the right, Dickinson was bound to carry on the business according to the spirit of the agreement. The making and selling the ploughs was as much a part of the contract as the payment of the $150, and if Dickinson fails to perform his part of the contract by not making and vending the ploughs, and not getting his castings of Peacock, it is sufficient reason for annulling the contract. If Peacock had been the cause of the failure, that would have excused Dickinson; but he was not. The refusing by Dickinson to account to Peacock for the castings according to the terms of the contract was the cause of Peacock's refusing to supply Dickinson when required, according to the testimony of Abel Smith. Dickinson made the first failure. He has also failed in making a supply of these ploughs, and in this way he has deprived Peacock of the benefit of his discovery. The defendant has complained of the vexation of the suits prosecuted by Peacock against Dickinson and of the assignment of his account. All this he had a right to do, and [it] cannot fairly be alleged as the cause of his (the defendant's) failure.

The agreement must be annulled. An account should be taken of the money due to Peacock for castings from Dickinson. Dickinson should be allowed in the $150 for so much of the time the patent has to run, and that sum abated for the time to come should be a credit to him for the castings he has received.